UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION


AUTO OWNERS INSURANCE COMPANY, )
a Michigan Insurer,           )
                              )
            Plaintiff         )
                              )
            v.                )   Case No. 2:04 cv 174
                              )
LA OASIS, INC., an Indiana    )
Corporation; HARRY RANDHAWA, an)
Indiana Resident; RM PETROLEUM,)
INC., an Illinois Corporation; )
and ROBERT STAMBOLIC, an      )
Illinois Resident,            )
                              )
            Defendants        )


OPINION AND ORDER

This matter is before the court on the Motion for Summary
Judgment filed by the plaintiff, Auto Owners Insurance Company,
on January 18, 2005, and the Objection and Motion to Strike
Answer of Defendants La Oasis, Inc. and Harry Randhawa filed by
Auto Owners on February 17, 2005.  For the reasons set forth
below, the motion for summary judgment is **DENIED,** and the Motion
to Strike is **DENIED.**  The court further **GRANTS** summary judgment
in favor of the defendants La Oasis and Randhawa.

Background

This case is an action for declaratory judgment in which
Auto Owners seeks to establish that it is not obligated to defend
or indemnify the defendants La Oasis and Randhawa, an officer and
shareholder of La Oasis, in a pending state court action filed by
RM Petroleum, Inc. ("RMP") and one of its officers and sharehold-
ers, Robert Stambolic.  The state court complaint filed by RMP

and Stambolic alleges that on December 2, 1997, La Oasis and Randhawa entered into a dealer agreement with Shell Oil Company in which La Oasis would "purchase certain quantities of gasoline from Shell each month, and sell Shell-branded motor fuels and lubricants under Shell's trademarks, brand names, service marks and color schemes ('Shell Identifications')." (Underlying Comp. ∂ 10) Randhawa and La Oasis also entered a Security Agreement granting Shell a security interest in La Oasis' inventory, an Incentive Agreement, and a Contingency Promissory Note. (Underlying Comp. ∂∂ 11, 13) Randhawa executed a personal Guaranty with respect to the note, as well as a general Guaranty with respect to the indebtedness of La Oasis. (Underlying Comp. ∂∂ 12, 14)

In 2002, Shell and RMP entered into a Wholesaler Agreement by which RMP was authorized to sell Shell products to dealers in Lake County, including La Oasis, and to cause Shell-branded dealers to follow standards for the use of the Shell Identifica-tions. (Underlying Comp. ∂ 16) RMP also received an assignment of all Shell's contractual rights and obligations relating to retail operations throughout Lake County through an Assignment of Dealer Instruments. (Underlying Comp. ∂ 17)

The underlying complaint alleges that on May 12, 2003, La Oasis "began the sale of non Shell-branded and commingled Shell-branded and unbranded gasoline . . . despite the continued presence of Shell-branded trademarks, colors and other Shell Identifications on and about the station." (Underlying Comp. ∂ 24) Count I of the complaint, asserted only against La Oasis,

alleges that La Oasis breached the Dealer Agreement by selling non-branded or commingled gasoline under Shall Identifications in violation of the Dealer Agreement provision which states:

> 3.1 General Shell hereby grants to Dealer the right to use Shell's Identifications to iden-tify and advertise for resale at Dealer's Station the Petroleum Products and other Shell branded products Dealer may purchase. However, Dealer shall not sell, under Shell's Identifications, any product other than Shell products, or any mixture or adulteration of any of the Shell products with each other or with any other product or material.  If Deal-er ceases to sell the Petroleum Products or uses Shell's Identifications in a manner which deceives or causes a likelihood of confusion to the motoring public, or if this Agreement terminates for any reason, Dealer shall immediately and completely discontinue the use of Shell's Identifications. . . .
>
> Underlying Comp. ∂ 26

In addition, Count I alleges that La Oasis failed to pay for gasoline loads exceeding $13,007.67 in value.  In this Count, RMP and Stambolic seek an injunction, compensation for RMP's lost revenue, profits, and damages related to the breach of the Dealer Agreement, costs and attorneys fees, and treble damages, costs, and attorneys fees connected with La Oasis' failure to tender sufficient checks under 720 ILCS 5/17-1a.

Count V of the complaint alleges trademark infringement and unfair competition in violation of the Lanham Act by La Oasis and Randhawa's use of the Shell name, logo, and colors while selling non-Shell gasoline or commingled gasoline from Shell-branded pumps.  Count V also quotes Section 3.1 of the Dealer Agreement in support of the allegation that La Oasis was granted only

limited and restricted rights to use the Shell Identifications.
Like Count I, Count V seeks an injunction, costs and attorneys
fees, and RMP's lost revenue, profits, and damages due to breach
of the Dealer Agreement.  However, Count V also seeks an account-
ing and disgorgement of the profits realized through the unlawful
conduct of La Oasis and Randhawa, as well as treble damages under
the Lanham Act, 15 U.S.C. ß1117.

The remaining four counts of the complaint allege violations
of the Guarantees made by Randhawa and breach of the promissory
note by Randhawa and La Oasis, as well as an allegation that
Randhawa assaulted Stambolic by making death threats to him.

The central question in this action for declaratory judgment
is whether the Lanham Act violations in Count V trigger Auto
Owners' duties to defend and indemnify under its Commercial
General Liability policy of Insurance for La Oasis.  In pertinent
part, "Coverage B" of the Auto Owners policy insures against
advertising injuries "caused by an offense committed in the
course of advertising your goods, products or services."  *See*
Appendix to MSJ, p. 224.  The definition of "advertising injury"
includes the following offenses:

> c.    misappropriation of advertising ideas or
>       style of doing business; or
>
> d.    infringement of copyright, title, or
>       slogan.

*See* Appendix to MSJ, p. 230

However, the policy excludes advertising injuries caused by
"[b]reach of contract, other than misappropriation of advertising

4

ideas under an implied contract." *See* Appendix to MSJ, p. 224. The policy does not define the categories of "advertising injury" offenses further, nor does it comment on the scope of the exclusion for "breach of contract."  Nevertheless, Auto Owners argues that summary judgment is appropriate because the allegations in the state court complaint fall within the breach of contract exclusion to the policy.  Auto Owners also seek to strike La Oasis' and Randhawa's answer to the complaint, which was filed eight months later.

Discussion

A.  <u>Motion to Strike</u>

Federal Rule of Civil Procedure 6(b)(2) allows a defendant to file an answer after the designated time for fling such a pleading "upon motion made . . . where the failure to act was the result of excusable neglect."  The Supreme Court has held that neglect is an "elastic concept" that extends to inadvertent delays as well as "omissions caused by circumstances beyond the control of the movant." ***Pioneer Investment Services v. Brunswick Associates Limited Partnership***, 507 U.S. 380. 392, 113 S.Ct. 1489, 1496, 123 L.Ed.2d 74 (1993).  In determining whether neglect is excusable, the court looks to four factors: (1) "the danger of prejudice" to the other party; (2) "the length of the delay and its potential impact on judicial proceedings," (3) "the reason for the delay," and (4) "whether the movant acted in good faith." ***Pioneer***, 507 U.S. at 395, 113 S.Ct. at 1498.

5

When applied to the facts of this case, the *Pioneer* factors show that permitting La Oasis and Randhawa to file their answer late would not prejudice Auto Owners.  First, the only prejudice that Auto Owners argues would occur by the late filing is that the answer may preclude summary judgment by creating a question of fact.  However, Local Rule 56.1 states that in ruling on a motion for summary judgment, "the court will assume that the facts as claimed and supported by admissible evidence by the moving party are admitted to exist without controversy, except to the extent that such facts are controverted in the 'Statement of Genuine Issues' filed in opposition to the motion."  Here, the parties do not dispute the existence of a contract, the terms of the contract, or the allegations of the underlying complaint in their summary judgment briefs.  In addition, as more fully illustrated below, summary judgment in this case centers on a legal question of the scope of certain policy provisions under Indiana law.  Thus, the late answer has no impact on the merits of this case, especially since the parties have fully briefed a motion for summary judgment.

The length of delay in filing an answer also has had no impact on the proceedings.  Auto Owners had ample time to file a motion for default judgment in the absence of an answer from La Oasis and Randhawa, but it chose to file a motion for summary judgment on the legal question of coverage instead.  The summary judgment was timely and fully briefed March 18, 2005, and the

6

late answer has not affected this court's ability to address that motion.

Finally, La Oasis and Randhawa aver that they failed to file an answer out of "simple mistake." (Brief Opp. Mot. to Strike, p. 4) The *Pioneer* court contemplated inadvertence as one aspect of excusable neglect. In the absence of any articulable harm to Auto Owners, the court will not strike the tardy answer, even though it is eight months late. The court also declines to find "bad faith," as Auto Owners suggests, merely because La Oasis and Randhawa deny a number of the allegations in the complaint. These denials may simply be the product of a cautious counsel not wishing to become embroiled in questions of collateral estoppel in the underlying suit. For these reasons, the motion to strike is denied.

## B. <u>Motion for Summary Judgment</u>

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is proper only if it is demonstrated that "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 91 L.Ed.2d 265, 106 S.Ct. 2548 (1986); *Lawrence v. Kenosha County*, 391 F.3d 837, 841 (7th Cir. 2004); *Branham v. Snow*, 392 F.3d 896, 901 (7th Cir. 2004); *Windle v. City of Marion, Indiana*, 321 F.3d 658, 660-61 (7th Cir. 2003), *cert. denied*, 540 U.S. 873, 124 S.Ct. 873, 157 L.Ed.2d 133 (2003). The burden is upon the moving party to establish that no material facts are in genuine dispute, and any doubt as to the

existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Company*, 398 U.S. 144, 160, 90 S.Ct. 1598, 1610, 26 L.Ed.2d 142, 155 (1970); *Lawrence*, 391 F.3d at 841. A fact is material if it is outcome determinative under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 212 (1986); *Lawrence*, 391 F.3d at 841; *Hottenroth v. Village of Slinger*, 388 F.3d 1015, 1027 (7th Cir. 2004); *Palmer v. Marion County*, 327 F.3d 588, 592 (7th Cir. 2003). Even if the facts are not in dispute, summary judgment is inappropriate when the information before the court reveals a good faith dispute as to inferences to be drawn from those facts. *Spiegula v. Hull*, 371 F.3d 928, 935 (7th Cir. 2004); *Hines v. British Steel Corporation*, 907 F.2d 726, 728 (7th Cir. 1990). Finally, summary judgment "will not be defeated simply because motive or intent are involved." *Roger v. Yellow Freight Systems, Inc.*, 21 F.3d 146, 148 (7th Cir. 1994). *See also Miller v. Borden, Inc.*, 168 F.3d 308, 312 (7th Cir. 1999); *Plair v. E.J. Brach & Sons, Inc.*, 105 F.3d 343, 346 (7th Cir. 1997); *United Association of Black Landscapers v. City of Milwaukee*, 916 F.2d 1261, 1268 (7th Cir. 1990).

In deciding a motion for summary judgment, the trial court must determine whether the evidence presented by the party opposed to the summary judgment is such that a reasonable jury might find in favor of that party after a trial.

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial--whether, in other words,

8

> there are any genuine factual issues that
> properly can be resolved only by a finder of
> fact because they may reasonably be resolved
> in favor of either party.
>
> [T]his standard mirrors the standard for a
> directed verdict under Federal Rule of Civil
> Procedure 50(a), which is that the trial
> judge must direct a verdict if, under the
> governing law, there can be but one reason-
> able conclusion as to the verdict.
>
> *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511

*See also* ***Reeves v. Sanderson Plumbing Prods., Inc.***, 530 U.S. 133,

149-151, 120 S.Ct. 2097, 2109, 147 L.Ed.2d 105, 120-22 (2000)

(setting out the standard for a directed verdict); ***Celotex Corp.***,

477 U.S. at 322-323, 106 S.Ct. at 2553; ***Branham***, 392 F.3d at 901;

***Lawrence***, 391 F.3d at 841; ***Hottenroth***, 388 F.3d at 1027 (stating

that a genuine issue is one on which "a reasonable fact finder

could find for the nonmoving party"); ***Schuster v. Lucent Technol-

ogies, Inc.***, 327 F.3d 569, 573 (7th Cir. 2003)(stating that a

genuine issue exists and summary judgment is inappropriate if

there is sufficient evidence for a jury to return a verdict for

the nonmoving party).

Because no determination of La Oasis and Randhawa's liabil-

ity has been made in the state court proceeding, summary judgment

in this case hinges on whether Auto Owners has the duty to defend

in that underlying case.  *See* ***Heritage Mutual Insurance v.

Advanced Polymer Technology, Inc.***, 97 F.Supp.2d 913, 917 (S.D.

Ind. 2000).  A federal court sitting in diversity must apply

Indiana substantive law to the insurance policy in dispute.  *See*

***Charter Oak Fire Insurance Company v. Hedeen & Companies***, 280

F.3d 730, 735 (7th Cir. 2002).  The court notes that summary
judgment may be determined purely as a matter of law, as the
parties do not dispute the facts.  *See* Local Rule 56.1.

An insurer's duty to defend is determined by the allegations
in the underlying complaint.  *See **Illinois Farmers Insurance
Company v. Wiegand**,* 808 N.E.2d 180, 184 (Ind. App. 2004), *trans.
denied,* 822 N.E.2d 975 (Ind. 2004).  If the complaint indicates
that "a claim is clearly excluded under the policy, then no
defense is required."  **Wiegand**, 808 N.E.2d at 184.  Moreover,
"[i]f the insurer owes no duty to defend, then it owes no duty to
indemnify."  **Housing Authority Risk Retention Group, Inc. v.
Chicago Housing**, 378 F.3d 596, 603 (7th Cir. 2004).  Thus, "an
insurer's duty to defend is broader than its duty to indemnify."
**Fidelity and Guaranty Insurance v. Kocolene Marketing Corpora-
tion**, No. IP 00-1106-C-T/K, 2002 WL 977855, at *4 (S.D. Ind. Mar.
26, 2002).  *See also **Transamerica Insurance Services v. Kopko**,*
570 N.E.2d 1283, 1285 (Ind. 1991).  Nevertheless, "[i]f recovery
in the underlying suit is premised upon several theories of
liability, some of which are not covered under the policy, the
insurer has a duty to defend if just one theory falls within the
policy's coverage."  **Kocolene**, 2002 WL 977855, at *4 (*citing
**Kopko**,* 570 N.E.2d at 1285); **Heritage Mutual**, 97 F.Supp.2d at 918.

In Indiana, contracts for insurance are generally "subject
to the same rules of interpretation as are other contracts."  **Eli
Lilly and Company v. Home Insurance Company**, 482 N.E.2d 467, 470
(Ind. 1985).  In addition, "[t]he interpretation is 'primarily a

10

question of law for the court, even if the policy contains an ambiguity needing resolution.'" *Heritage Mutual*, 97 F.Supp.2d at 918 (*quoting* **USA Life One Insurance Company v. Nuckolls**, 682 N.E.2d 534, 537-38 (Ind. 1997). *See also* **Gallant Insurance Company v. Oswalt**, 762 N.E.2d 1254, 1262 (Ind. App. 2002). The intent in an unambiguous contract is determined by the plain and ordinary terms within the four corners of the contract. **Perfect v. McAndrew**, 798 N.E.2d 470, 479 (Ind. App. 2003); **Dempsey v. Carter**, 797 N.E.2d 268, 273 (Ind. App. 2003), *trans. denied*, 812 N.E.2d 803 (Ind. 2004). An unambiguous contract must be enforced as written. *See* **Perfect**, 798 N.E.2d at 479. However, if a contract is ambiguous, "the language should be construed in favor of the insured and against the insurer." **Kocolene**, 2002 WL 977855, at *4. *See also* **Hoosier Insurance Company v. Audiology Foundation of America**, 745 N.E.2d 300, 307 (Ind. App. 2001), *trans. denied*, 761 N.E.2d 424 (Ind. 2001) ("Ambiguous terms in an insurance policy are to be construed against the insurer."). The court will find that "[a] contract is ambiguous only if reasonably intelligent people could honestly find the contract's provisions susceptible to more than one interpretation." **Dempsey**, 797 N.E.2d at 273. A contract is not ambiguous merely because the parties disagree as to the meaning. **Crowe v. Boofter**, 790 N.E.2d 608, 610-11 (Ind. App. 2003); **Roy A. Miller & Sons, Inc. v. Industrial Hardwoods Corporation**, 775 N.E.2d 1168, 1173 (Ind. App. 2002).

Under Indiana law, La Oasis and Randhawa first bear the burden of establishing (1) that the allegations in the underlying complaint fall within the categories of "advertising injury" outlined in the insurance policy and (2) that the advertising injury offense "occurred in the course of advertising [La Oasis'] goods, products or services." *Heritage Mutual*, 97 F.Supp.2d at 920. *See also Kocolene*, 2002 WL 977855, at *5. Auto Owners then "bears the burden of proving that an exclusion applies." *Kocolene*, 2002 WL 977855, at *5.

La Oasis and Randhawa argue that the Lanham Act violations alleged in the underlying complaint are covered by either the "misappropriation of advertising ideas or style of doing business" or "infringement of copyright, title or slogan" category in the "advertising injury" provision of the Auto Owners policy. This court's task is to "predict how the Indiana Supreme Court would decide the issues if presented in the context in which it arises here." *Kocolene*, 2002 WL 977855, at *1. Although only one Indiana Appellate court and two federal courts considering Indiana law have addressed the meaning of "advertising injury" within the context of policy provisions such as these, the cases indicate that the Supreme Court of Indiana would find that the alleged trademark infringements would fall under one, if not both, of these insured categories. *See generally Kocolene*, 2002 WL 977855; *Heritage Mutual*, 97 F.Supp.2d 913; *Hoosier Insurance*, 745 N.E.2d 300.

12

## 1. Infringement of Title

Trademark and trade dress infringement claims "arguably fall under the 'infringement of title' offense in the 'advertising injury' provision." *See* ***Kocolene***, 2002 WL 977855, at *9 (collecting cases). *See also* ***Charter Oak***, 280 F.3d at 730. In ***Charter Oak***, an insurer sought to avoid the duty to defend a trademark infringement suit by arguing that trademark infringement was not an enumerated offense in its "infringement of copyright, title or slogan" policy provision. *See* 280 F.3d at 735. In rejecting this argument, the Seventh Circuit looked to its previous decisions applying Wisconsin and California law to find that

> infringement of title "presumably" involves titles "of books, songs, products, services, and so forth" and is not clearly limited, as Charter Oak asserts, to the infringement of a noncopyrightable title of a creative work. . . . [I]n analyzing the word "title" in the phrase "infringement of copyright, title or slogan," we [have previously] held that "[r]eading these words together implies that 'infringement' means using someone else's words, so that 'title' refers to names and related trademarks, following the phrase 'copyright infringement.'" (internal citation omitted)
>
> ***Charter Oak***, 280 F.3d at 736 (*quoting* ***Curtis-Universal, Inc. v. Sheboygan Emergency Medical Services, Inc.***, 43 F.3d 1119, 1124 (7th Cir. 1994) *and quoting* ***Zurich Insurance Company v. Amcor Sunclipse North America***, 241 F.3d 605, 608 (7th Cir. 2001))

Therefore, the Seventh Circuit held that "the term 'infringement of . . . title' as used in the contract is broad enough to

encompass claims of trademark infringement. . . ." *Charter Oak*,
280 F.3d at 736.

Although the Seventh Circuit was proceeding under Wisconsin
law in *Charter Oak*, the Southern District of Indiana reached the
same conclusion by applying the Seventh Circuit's reasoning to an
insurance contract under Indiana law in *Kocolene*.  *See* 2002 WL
977855, at *9-10.  The *Kocolene* court also found that "the
conclusion that trademark comes within the meaning of the word
'title' is supported by the plain, ordinary meaning of the word
'title' . . . . a 'mark, style or designation; a distinctive
appellation; the name by which anything is known.'" *See* 2002 WL
977855, at *10 (*quoting Black's Law Dictionary* 1485 (6th ed.
1990)).  This court finds the reasoning of *Charter Oak* and
*Kocolene* applicable to the Auto Owners policy here, thus requir-
ing coverage for trademark infringement under the policy.

Auto Owners' argument that this court should follow *Heritage
Mutual*, which is contrary to the holdings of *Charter Oak* and
*Kocolene*, is unpersuasive.  In *Heritage Mutual*, an insured sought
coverage for an underlying patent infringement and unfair compe-
tition suit under the "infringement of . . . title" provision of
its insurance policy.  *See* 97 F.Supp.2d at 921-22.  The Southern
District of Indiana rejected the insured's theory of liability
and held that "title" was more narrowly defined as "a non-copy-
rightable title of a book, film, or other literary or artistic
work." *Heritage Mutual*, 97 F.Supp.2d at 923-24 (collecting
cases).  In so holding, the court relied on the Sixth Circuit's

14

decision in *ShoLodge, Inc. v. Travelers Indemnity Company of Illinois*, 168 F.3d 256, 259 (6th Cir. 1999).  *See Heritage Mutual*, 97 F.Supp.2d at 923-24.

However, the Seventh Circuit expressly rejected *ShoLodge* in *Charter Oak*.  *See Charter Oak*, 280 F.3d 730, 736.  Moreover, *Heritage Mutual* was decided prior to the Seventh Circuit's opinion in *Charter Oak*.  Following *Charter Oak,* the Southern District of Indiana issued *Kocolene*, in which that court declined to follow *ShoLodge* and found that trademark could fall under the "infringement of title" provision, pursuant to *Charter Oak*.  *See Kocolene*, 2002 WL 977855, at *9-10.  Therefore, this court questions the continuing validity of that portion of *Heritage Mutual* which analyzes the meaning of "infringement of title."

In any event, "the divergence of case law regarding whether trademark and trade dress infringement comes within the 'infringement of title' offense in standard CGL advertising injury provisions is indicative that the language is ambiguous."  *See Kocolene*, 2002 WL 977855, at *11.  As ambiguous language must be construed against Auto Owners, the court finds that trademark infringement may fall under the "infringement of title" category of "advertising injury" for this reason as well.  *See Kocolene*, 2002 WL 977855, at *11.

### 2.  Misappropriation of Advertising Ideas or Style of Doing Business

Beyond "infringement of title," the trademark infringement alleged in the underlying complaint against La Oasis and Randhawa

more securely falls within the "misappropriation of advertising ideas or style of doing business" category of advertising injury. *See* **Kocolene**, 2002 WL 977855, at *7 ("[T]he majority of courts that have considered the issue have held that trademark and trade dress infringement are covered under the 'misappropriation of advertising ideas or style of doing business' phrase of the 'advertising injury' provision in standard CGL policies.") (collecting cases).  This category actually incorporates two discrete advertising injuries: (1) misappropriation of advertising ideas, and (2) misappropriation of style of doing business. *See* **Heritage Mutual**, 97 F.Supp.2d at 926.  *See also* **Hoosier Insurance**, 745 N.E.2d at 307 n.5.  Courts are split on the scope of the term "misappropriation" in the context of insurance provisions such as these.  *See* **Heritage Mutual**, 97 F.Supp.2d at 926; *see* **Hoosier Insurance**, 745 N.E.2d at 307.  According to **Hoosier Insurance**, "[s]ome courts have construed it narrowly, to track the common-law tort of misappropriation, while others broadly define it in its lay sense to mean 'to take wrongfully.'" (*citing* **Heritage Mutual**, 97 F.Supp.2d at 926).  However, the Indiana Court of Appeals has approved the broader approach favored by the **Heritage Mutual** court.  *See* **Heritage Mutual**, 97 F.Supp.2d at 926; **Hoosier Insurance**, 745 N.E.2d at 307.

In **Kocolene**, the Southern District of Indiana adopted a definition of "misappropriation of advertising ideas" meaning "the wrongful taking of the manner by which another advertises its goods or services."  **Kocolene**, 2002 WL 977855, at *8 (*quoting*

16

*J.A. Brundage Plumbing & Roto-Rooter, Inc. v. Massachusetts Bay, Inc.*, 818 F.Supp. 553, 557 (W.D.N.Y. 1993), *vacated contingent to settlement*, 153 F.R.D. 36 (W.D.N.Y. 1994)).  *See also* **Heritage Mutual**, 97 F.Supp.2d at 926 (holding that "misappropriation of advertising ideas" occurs when "the insured wrongfully took an idea about the solicitation of business.").  In the complaint underlying **Kocolene**, Philip Morris USA alleged that the defendants, including Kocolene, were unlawfully selling MARLBOROÆ cigarettes designated for export to foreign countries within the United States.  *See* 2002 WL 977855, at *3.  Among other differences in packaging, these cigarettes lacked promotional MARLBOROÆ "Miles" UPCs contained in the domestically-sold cigarettes which could be redeemed for merchandise within the United States.  *See* **Kocolene**, 2002 WL 977855, at *3.  The complaint further alleged numerous Lanham Act violations in that the defendants had deceived customers into buying the re-imported cigarettes by "[adulterating] the packaging of both the carton and the individual packs of the re-entered MARLBOROÆ products" by affixing stickers, rewrapping the cigarette packages, and affixing state tax stamps.  *See* **Kocolene**, 2002 WL 977855, at *3.  In finding that these actions could constitute "misappropriation of advertising ideas," under the definition set forth above, the **Kocolene** court adopted the reasoning of the *J.A. Brundage* court:

> The court reasoned that the Lanham Act defines "trademark" as "any word, name, symbol or device or any combination thereof" used to identify and distinguish one's goods from those manufactured or sold by others.  The

> court also concluded that "misappropriation
> of style of doing business" included trade-
> mark and trade name infringement.  It ex-
> plained that "one's mark and name is an inte-
> gral part of an entity's 'style of doing
> business.'" (internal citations omitted)
>
> *Kocolene*, 2002 WL 977855, at *8 (*quoting* *J.A.
> Brundage*, 818 F.Supp. at 557)

The *Kocolene* court further posited that the cigarette packaging
arguably could be an "advertising idea" itself, in that the
packaging allegedly attracted customers and deceived them into
purchasing the cigarettes.  *See* 2002 WL 977855, at *8.  Thus, the
*Kocolene* court found the insurer had a duty to defend as a matter
of law.  *See* 2002 WL 977855, at *15 (noting the insurer's failure
to raise any of the policy exclusions in defense).

Turning to "misappropriation of style of doing business,"
the Indiana Court of Appeals has concurred with the *Heritage
Mutual* court and "'with the vast majority of courts' that style
of doing business is defined as 'a company's comprehensive manner
of operating its business.'" *Hoosier Insurance*, 745 N.E.2d at 307
(*quoting* *Heritage Mutual*, 97 F.Supp.2d at 928).  Moreover, "most
courts have equated the phrase 'misappropriation of . . . style
of doing business' to trade dress infringement since, for exam-
ple, a business' total image and comprehensive style of doing
business could become inherently distinct and recognizable."
*Heritage Mutual*, 97 F.Supp.2d at 928 (collecting cases in the
majority and minority).  Although no court applying Indiana law
expressly has determined whether Indiana follows the majority or
minority on this point, this court finds that the Indiana Supreme

18

Court would follow the majority view in light of the Indiana
Appellate Court's decision in *Hoosier Insurance*.  *See* 745 N.E.2d
at 308.  The *Hoosier Insurance* court took a loose approach to the
phrase "style of doing business," finding that a newer profes-
sional association that credentialed audiologists could have
misappropriated the style in which an older professional associa-
tion did business because the older association credentialed
audiologists as well.  *See* 745 N.E.2d at 308 (rejecting the
argument that the businesses would have to be nearly identical
because "a 'style' of doing business is not so restrictive.").
*See also* *Heritage Mutual*, 97 F.Supp.2d at 929 ("[W]e can imagine
scenarios in which the physical appearance of a company's marquee
product is so inherently distinctive and widely adopted by the
company that the product itself reflects the company's comprehen-
sive manner of operating its business.").

The trademark infringement allegations of the underlying
complaint against La Oasis and Randhawa arguably fall under the
"misappropriation of advertising ideas" offense as considered in
*Kocolene* or alternatively, under the broad definition of "misap-
propriation of style of doing business" set forth in *Hoosier
Insurance* and *Heritage Mutual*.  The complaint alleges that La
Oasis sold non Shell-branded gasoline and commingled Shell-
branded and unbranded gasoline under the Shell Identifications,
thereby causing customer confusion.  This assertion is strikingly
similar to the facts of *Kocolene*, in which the defendants at-
tempted to pass off re-imported MARLBORO® cigarettes, which

19

lacked certain essential components of their domestic counter-
parts, as the domestic equivalent. *See* 2002 WL 977855, at *3.

This court agrees with the *Kocolene* court's reasoning that
under these circumstances, the packaging of the product could be
an "advertising idea" itself.  To a lay person, the only charac-
teristics distinguishing one gasoline product from another are
the "Identifications" branding the gasoline as originating from a
particular oil company.  Similarly, La Oasis could be said to
have misappropriated the plaintiff's "style of doing business" by
continuing to appear in the public eye as a Shell gas station
while selling non-Shell branded and commingled gasoline.  Consid-
ering that virtually the only way in which a consumer can locate
the gasoline of choice is through the Identifications used at
each gas station, this form of business is "inherently distinct
and recognizable" under *Heritage Mutual*.  *See* 97 F.Supp.2d at
928.  Therefore, the court finds that the Lanham Act violations
alleged in the complaint underlying this action could fall within
the scope of the "misappropriation of advertising ideas or style
of doing business" category of advertising injuries in the Auto
Owners policy, as well as the "infringement of title" category.

### 3.  In the Course of Advertising

Neither party disputes that the alleged trademark infringe-
ments occurred "in the course of advertising [La Oasis'] goods,
products or services."  (Appendix SMJ, p. 224) The term "adver-
tise" is defined by *Black's Law Dictionary* as: "1. The action of
drawing the public's attention to something to promote its sale."

20

*Black's Law Dictionary* 59 (8th ed. 2004).  Under an earlier but
materially similar definition of "advertising" contained in
*Black's*, the *Kocolene* court determined that a more general
approach to the term is appropriate when a court is considering a
coverage provision, rather than an exclusionary provision, of a
CGL policy.  *See* 2002 WL 977855, at *12 (considering the sixth
edition of *Black's Law Dictionary*, which defined advertising in
part as "[t]o call a matter to the public attention by any means
whatsoever . . . Any oral, written, or graphic statement . . . in
any tag or label attached to or accompanying any merchandise").
Thus, the *Kocolene* court found that the label and packaging of a
product could be "advertising," in that "they 'functioned as
mini-ads that were tied to the products, clearly promotional in
nature yet distinct from the products themselves.'" *See* 2002 WL
977855, at *12 (*quoting* **Flodine v. State Farm Insurance Company**,
99 C 7466, 2001 WL 204786, at *10 (N.D. Ill. 1998)).  The facts
of this case dictate the same result.

Like in *Kocolene*, the advertising provision at issue in this
case is one of coverage, rather than exclusion.  (*See* Appendix
SMJ, p. 224) ("This insurance applies to . . . 'advertising
injury' . . .").  Additionally, the Shell Identifications that
constitute the primary, if not only, means of identifying Shell-
branded gasoline to the consumer public function as promotional
mini-advertisements for the brand.  The underlying complaint
notes as much, stating that the sale of non-branded and commin-
gled gasoline from Shell gasoline pumps "would likely produce

21

customer confusion." *(See* Underlying Comp., Count V, ∂ 36)
Therefore, the court finds that the use of Shell Identifications
at the La Oasis gas station constituted advertising activity.

The allegations of trademark infringement in the underlying
complaint also enable La Oasis to establish a "causal connection
between the advertising injury and [La Oasis'] advertising
activities." *See **Kocolene***, 2002 WL 977855, at *13 (noting the
necessity of proving both "advertising activity" and a causal
connection between the advertising injury and the advertising
activity).  The Seventh Circuit has held that "[a]ctions taken
'in the course of advertising' must involve actual, affirmative
self-promotion of the actor's goods or services." *See **Erie
Insurance Group v. Sear Corporation***, 102 F.3d 889, 894 (7th Cir.
1996). *See also **Charter Oak***, 280 F.3d at 736-37 (holding that
the presence of a trademark on the business letterhead of a
company who did not hold the mark, thereby resulting in customer
confusion and unlawful profits, could constitute the use of the
trademark in the course of advertising).  Furthermore, a number
of courts, including ***Kocolene***, have found that "claims for
trademark and trade dress infringement and false designation of
origin under the Lanham Act . . . 'inherently and necessarily
implicate advertising activities.'" *See **Kocolene***, 2002 WL 977855,
at *13 (*quoting **Gemmy Industrial Corporation v. Alliance General
Insurance Company***, No. 3-98-CV-0014-BD, 1998 WL 804698, at *3
(N.D. Tex. Nov. 17, 1998), *aff'd* 200 F.3d 816 (5th Cir. 1999) and
collecting cases). *See also **Houbigant, Inc. v. Federal Insurance***

22

*Company*, 374 F.3d 192, 201 (3rd Cir. 2004) ("Trademarks, there-
fore, have the same purpose as advertising"); *Frogg, Switch &
Manufacturing Company v. Travelers Insurance Company*, 193 F.3d
742, 749 (3rd Cir. 1999) (concluding that causation can be found
where "the injury [is] complete in the advertisement, requiring
no further conduct").  Because the causation element necessarily
follows the trademark infringement allegations of the underlying
complaint, and because Auto Owners does not question this conclu-
sion, La Oasis and Randhawa have met their burden of establishing
that the alleged trademark infringements occurred in the course
of advertising.

### 4.  Breach of Contract Exclusion

Although Auto Owners seeks summary judgment on the theory
that "the obligation of La Oasis to refrain from violation of the
Lanham Act is *incorporated and subsumed* as an express obligation
and duty of La Oasis under the terms of the written dealer
agreement between the parties," Auto Owners offers no law in
support of its position beyond a short policy argument raised for
the first time in its reply brief.  (Reply Brief, p. 4)(emphasis
added).  *See also* *Pugel v. Board of Trustees of the University of
Illinois*, 378 F.3d 659, 669 (7th Cir. 2004) ("Arguments raised
for the first time in a reply brief are waived.") La Oasis and
Randhawa also fail to provide any guidance on the issue, conclud-
ing without citation to law that Auto Owners has a duty to defend
because the Lanham Act claims may be maintained independently of
any contract. (Response Brief, pp. 4-5) In light of Auto Owners'

23

failure to produce any case authority on an issue for which it
bears the burden, and in light of this court's independent survey
of the law pertaining to breach of contract exclusions, the court
finds that the breach of contract exception does not apply to the
trademark infringement claims in the underlying complaint.

No court interpreting Indiana law has addressed the exclu-
sion for "advertising injury arising out of breach of contract"
contained in a CGL policy.  However, courts considering other
states' law have taken two divergent approaches to this issue.
*See* ***Houbigant***, 374 F.3d at 202 (summarizing the approaches and
collecting cases).  Some courts have construed "arising out of"
broadly "to include injury 'originating from,' 'having its
origins in,' 'growing out of,' or 'flowing from' the contractual
relationship." ***Houbigant***, 374 F.3d at 202.  These courts gener-
ally hold that the breach of contract exception excludes trade-
mark infringement claims brought in tandem with a breach of
contract action.  *See, e.g.,* ***Sport Supply Group, Inc. v. Columbia***
***Casualty Company***, 335 F.3d 453, 458–59 (5th Cir. 2003).

For example, in ***Sport Supply***, "MacMark entered a licensing
agreement with Sport Supply, which permitted Sport Supply to use
MacMark's 'Macgregor' trademark on certain sporting goods."  335
F.3d at 456.  When MacMark notified Sport Supply that it would be
terminating the licensing agreement because Sport Supply alleg-
edly had sold trademarked products on the Internet in violation
of the agreement, Sport Supply brought a declaratory action
seeking to establish that it was not in breach of the agreement.

24

*See* **Sport Supply**, 335 F.3d at 456.  In a subsequent action to recoup defense costs from its insurer Columbia, Columbia argued that the "breach of contract" provision excluded coverage of trademark infringement claims.  *See* **Sport Supply**, 335 F.3d at 458.  The Fifth Circuit agreed, holding that because Texas law interpreting "arising out of" language merely required an "incidental relationship" to the conduct described in the exclusionary provision, the alleged trademark infringements were excluded by the breach of contract exception.  *See* **Sport Supply**, 335 F.3d at 458-59.  However, as other cases indicate, states that follow a "but for" test for interpreting the phrase "arising out of" reach the opposite result.  *See, e.g.,* **Houbigant**, 374 F.3d at 202-03 (applying New Jersey law); **Hugo Boss Fashions, Inc. v. Federal Insurance Company**, 252 F.3d 608, 623 n.15 (2nd Cir. 2001) (applying New York law); **Assurance Company of America v. J.P. Structures, Inc.**, No. 95-2384, 96-1010, 96-1027, 1997 WL 764498, at *1-5 (6th Cir. Dec. 3, 1997) (applying Michigan law).

    States that employ a "but for" test when construing "arising out of" exclusions in a CGL policy define the scope of such exclusions much more narrowly.  *See, e.g.,* **Houbigant**, 374 F.3d at 202-03; **Hugo Boss**, 252 F.3d at 623 n.15; **J.P. Structures, Inc.**, 1997 WL 764498, at *1-5.  In these states, "the injury is only considered to have arisen out of the contractual breach if the injury would have not occurred <u>but for</u> the breach of contract." **Houbigant**, 374 F.3d at 202 (emphasis in original).  In the context of trademark infringement, courts applying the "but for"

approach find that because trademark rights arise independently
of contract and can be infringed in the absence of contract,
trademark infringement falls outside the "breach of contract"
exclusion.  *See* ***Houbigant***, 374 F.3d at 203 ("The contractual
relationship was not endemic to the Insureds infringing of
Houbigant's trademarks.  Therefore, the contract exclusion does
not apply to Houbigant's tort claims."); ***Hugo Boss***, 252 F.3d at
623 n.15.

The Sixth Circuit's decision in ***J.P. Structures*** is instruc-
tive of this point and warrants considerable discussion in light
of the facts of the present case.  *See* 1997 WL 764498, at *1-5.
In ***J.P. Structures***, the defendant in the underlying suit, J.P.
Structures, entered into a franchise agreement with U.S. Struc-
tures which provided that J.P. Structures would operate a deck
construction business under U.S. Structures' "Archadeck" trade
name and trademarks.  *See* 1997 WL 764498, at *1.  The franchise
agreement stated that

> "upon termination of the contract, the defen-
> dant 'shall'
>
> (i)   immediately cease and desist from any
>       further operation of a deck sales and
>       construction service business under the
>       ARCHADECK name and mark;
>
> (ii)  immediately cease and desist from any
>       use of the name and mark ARCHADECK in
>       any manner whatsoever or as part of any
>       other words, names or character, or
>       service marks . . .
>
> ***J.P. Structures***, 1997 WL 764498, at *3-4

26

Following the termination of the franchise agreement, J.P. Structures continued to use U.S. Structures' "Archadeck" trade name and trademarks, which sparked a breach of contract and trademark infringement suit in state court. *See J.P. Structures*, 1997 WL 764498, at *1. Subsequently, Structures' insurance carrier, Assurance, filed a declaratory action in federal court in which Assurance argued that the "breach of contract" policy exclusion alleviated Assurance's obligation to defend the entirety of the underlying suit. *See J.P. Structures*, 1997 WL 764498, at *3-4. The district court ruled in favor of Assurance, and J.P. Structures appealed.

On appeal, the Sixth Circuit explicitly rejected the district court's conclusion "that the claim arose out of the breach because '[t]he breach of the franchise agreement is the basis upon which all other claims are causative.'" *See J.P. Structures*, 1997 WL 764498, at *3. The Court of Appeals noted, "To the extent U.S. Structures suffered damages as a result of the use of its trademark in advertising, it suffered <u>two kinds</u> of advertising injuries: those arising from the breach of the contract provisions pertaining to unauthorized use of the mark and those arising from the infringement of its trademark." *J.P. Structures*, 1997 WL 764498, at *4 (emphasis added). The court then rejected J.P. Structures' first argument that the policy exclusion did not apply because the trademark infringement action was independent of the breach of contract action. *J.P. Structures*, 1997 WL 764498, at *4 ("We reject this argument because it would

27

limit the applicability of policy exclusion . . . to claims for breach of contract, and because it would result in coverage whenever there is an independent theory of liability."). However, the Court of Appeals agreed with J.P. Structures' second argument that the "unauthorized use of the Archadeck trademark, not their breach of the franchise agreement, . . . gave rise to U.S. Structures' claim for trademark infringement." *J.P. Structures*, 1997 WL 764498, at *4. The Court of Appeals emphasized that the "substance of the underlying claim is trademark infringement, not breach of contract." *J.P. Structures*, 1997 WL 764498, at *4-5. Finally, the Court of Appeals turned to Michigan auto insurance cases addressing bodily injury "arising out of the ownership, maintenance or use of the owned automobile" to determine that Michigan would follow the "but for" line of cases, rather than the broader interpretation of "arising out of" followed by the Fifth Circuit. *See J.P. Structures*, 1997 WL 764498, at *5. The Court of Appeals concluded that Assurance's argument that "'but for' the breach of contract, the contract would not have been terminated, and the defendant would not have been unauthorized to use the trademark" was too remote a connection to warrant exclusion under the "but for" analysis. *J.P. Structures*, 1997 WL 764498, at *4. This court adopts the Sixth Circuit's reasoning and result.

In the absence of Indiana law interpreting "arising out of" language in an advertising injury context, this court will follow the Sixth Circuit's lead and turn to auto insurance cases. In

28

the seminal case *Indiana Lumbermens Mutual Insurance Company v. Statesman Insurance Company*, 291 N.E.2d 897, 899 (Ind. 1973), the Indiana Supreme Court held that the phrase "arising out of the ownership, maintenance or use" of a vehicle meant that "the 'efficient and predominating cause' of the accident must arise out of the use of the vehicle in order for an unnamed insured to be covered."  Subsequent courts have equated the "efficient and predominating cause" language in *Lumbermens* to a "but for" analysis.  *See, e.g.,* *Meridian Mutual Insurance Company v. Purkey*, 769 N.E.2d 1179, 1184-88 (Ind. App. 2002); *Franz v. State Farm Fire & Casualty Company*, 754 N.E.2d 978, 981 (Ind. App. 2001), *trans. denied*, 774 N.E.2d 506 (Ind. 2002) ("But for the driver's failure to steer the bus or apply the brakes in time to avoid the accident, Taylor would not have suffered injury.  In other words, the use of the bus was the 'efficient and predomi-nating cause' of Taylor's injuries." (*citing* *Lumbermens*, 291 N.E.2d at 898).  Accordingly, this court finds that the Indiana Supreme Court would follow the "but for" analysis utilized in *Houbigant, Hugo Boss,* and *J.P. Structures* when considering the impact of a breach of contract exclusion on trademark infringe-ment claims such as those in the underlying complaint.

The court further finds that *J.P. Structures* is on point with this case.  Like the terminated franchise agreement and subsequent trademark infringements in *J.P. Structures*, the underlying allegations of the complaint against La Oasis and Randhawa indicate that RMP's cause of action for trademark

29

infringement arose when La Oasis continued to utilize the Shell
Identifications in violation of the dealer agreement.  Also like
the Sixth Circuit, this court rejects Auto Owners' argument that
RMP's trademark infringement claim is somehow "subsumed" into the
breach of contract claims.  RMP's trademark rights arose prior to
and independently of its contract with La Oasis.  Thus, the
substance of Count V, the claim for trademark infringement, is
the infringement itself, which also exists independently of the
contract.  To hold otherwise would expand the breadth of the
exclusionary clause to cover any claims brought in conjunction
with a breach of contract claim, however tenuous the connection
between them.  *See* ***Erie Insurance Company v. Adams***, 674 N.E.2d
1039, 1041 (Ind. App. 1997) ("The exclusionary clause must
clearly and unmistakably bring within its scope the particular
act or omission that will bring the exclusion into play, and any
doubts as to the coverage shall be construed against the contract
drafter.").  For these reasons, the court finds that the breach
of contract exclusion does not relieve Auto Owners of its duty to
defend the underlying suit.

     Auto Owners also argues that summary judgment declaring that
the Auto Owners policy provides no indemnification for Counts I-
IV and VI of the underlying complaint is appropriate because La
Oasis and Randhawa "do not contest or challenge Auto Owners
Motion for Summary Judgment determining that its policy of
insurance provides no coverage for the claims set forth" in those
counts.  (Reply Brief, pp. 1-2) As noted above, Indiana law

states that the duty to defend on one theory triggers the duty to defend on all theories of recovery in the underlying suit. *See Kocolene*, 2002 WL 977855, at *4; *Heritage Mutual*, 97 F.Supp.2d at 918. La Oasis and Randhawa cannot be said to have waived their rights under this law, as they specifically point to its presence in their response brief. (*See* Response Brief, pp. 8-9) Additionally, a determination of indemnification is premature at this point, given that the state court has not yet determined that La Oasis and Randhawa are liable for the underlying claims. *See Charter Oak*, 280 F.3d at 738 (noting that an insurer's "duty to indemnify is 'limited to so much of the judgment or settlement as was fairly allocable to the claims . . . that were covered by the policy'") (*quoting Lockwood International, B.V. v. Volm Bag Company, Inc.*, 273 F.3d 741, 743 (7th Cir. 2001). Accordingly, the court rejects Auto Owners' argument.

Finally, the court treats Auto Owners' argument that it has no duty to defend on Count V, and thus on any Count, because Indiana recognizes an "implied exception that denies liability insurance coverage for damages resulting from intentional misconduct" as waived. (*See* Reply Brief, p. 6) In its opening brief, Auto Owners explicitly raised this argument only with respect to Count VI and failed to apply it in any respect to Counts I-V of the Complaint. (*See* Opening Brief, pp. 21-22) Then, for the first time in reply, Auto Owners argued that this theory also should apply to Count V, although Auto Owners provided minimal analysis on that point. (*See* Reply Brief, pp. 6-7) As previously stated

31

with respect to Auto Owners' policy argument, "arguments raised for the first time in a reply brief are waived."  *See Pugel*, 378 F.3d at 669.  Furthermore, the Seventh Circuit has recognized that courts need not and indeed should not expend limited judicial resources in researching, refining, and otherwise fleshing out arguments the parties themselves do not adequately support. *See Tyler v. Runyon*, 70 F.3d 458, 464-65 (7th Cir. 1995); *Hershinow v. Bonamarte*, 735 F.2d 264, 266 (7th Cir. 1984) (refusing to consider an argument that was briefed in a "perfunctory and undeveloped [ ]manner").  For these reasons, the court declines to address Auto Owners' "intentional misconduct" argument.

In conclusion, the court notes that despite the declaratory nature of this action, La Oasis and Randhawa have not filed a cross-motion for summary judgment.  Nevertheless, "a district court may enter summary judgment *sua sponte* so long as the losing party is given notice and an opportunity to be heard on the underlying issues." *Carolina Casualty Insurance Company v. E.C. Trucking*, 396 F.3d 837, 842 (7th Cir. 2005).  *See also Sawyer v. United States*, 831 F.2d 755, 759 (7th Cir. 1987); *Dayton Electric Manufacturing Company v. APCOM, Inc.*, 782 F.Supp. 389, 394 (N.D. Ill. 1992) (providing an excellent summary of the issues surrounding and the cases discussing grants of summary judgment *sua sponte*).  More specifically, the "weight of the authority . . . is that summary judgment may be rendered in favor of the opposing party even though the opponent has made no formal cross-motion under Rule 56."  10A Wright & Miller, *Federal Practice & Proce-*

32

*dure* ß2720 (1998).  A court may grant a motion for summary judgment *sua sponte* in favor of the nonmovant "if the case warrants it and such action will not procedurally prejudice the movant."  **Hines v. Marion County Election Board**, 166 F.R.D. 402, 407 (S.D. Ind. 1995) (citations omitted).

For the reasons set forth in this opinion, the court finds that summary judgment is appropriate in favor of all the defendants.  Auto Owners has had a full opportunity to respond to the legal issues presented by this declaratory action in the briefing of their own motion for summary judgment.  Thus, Auto Owners cannot be said to be prejudiced in any way by the granting of summary judgment in favor of the defendants, particularly given that the issue of coverage under the relevant policy provisions is a purely legal question for the court to decide.  However, defendants RMP and Stambolic did not join in the response of defendants La Oasis and Randhawa to Auto Owners' motion for summary judgment, nor have they responded independently.  While the court does not see how RMP and Stambolic would be prejudiced by a finding that Auto Owners has the duty to defend La Oasis and Randhawa in the underlying suit, RMP and Stambolic shall have 10 days from the date of this order to either state their objections to an entry of summary judgment in their favor or file a motion for entry of judgment consistent with this Opinion.

--------------------

For the foregoing reasons, Motion for Summary Judgment filed by the plaintiff, Auto Owners Insurance Company, on January 18,

33

2005 is **DENIED**, and the Objection and Motion to Strike Answer of Defendants La Oasis, Inc. and Harry Randhawa filed by Auto Owners on February 17, 2005 is **DENIED**.  The court further **GRANTS** summary judgment in favor of the defendants, La Oasis and Randhawa.  The defendants RM Petroleum and Stambolic are **ORDERED** to file either (1) any objections to summary judgment in their favor, or (2) a motion for entry of judgment consistent with this Opinion by June 8, 2005.

ENTERED this 26th day of May, 2005



s/ ANDREW P. RODOVICH
United States Magistrate Judge

34